IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BECKY AMAN,<br><br>      Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER**<br><br>Case No. 2:16-cv-929-BCW<br><br>Magistrate Judge Brooke Wells |

  Plaintiff Becky Aman ("Plaintiff") seeks judicial review[2] of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act[3] and supplemental security income under Title XVI.[4] After careful consideration of the record and the briefs filed by counsel, the Court has determined that oral argument is unnecessary and decides this case based on the record before it. For the reasons, set forth below, the Court REVERSES and REMANDS the decision of the Administrative Law Judge ("ALJ").

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* Docket no. 25.

[2] Pursuant to 42 U.S.C. § 405(g).

[3] 42 U.S.C. §§ 401-434.

[4] 42 U.S.C. §§ 1381-1383f.

# BACKGROUND[5]

On June 2, 2011, Plaintiff filed her applications for disability insurance benefits and supplemental security income alleging a disability onset date of February 5, 2007. Her application was denied and her first hearing was held before the ALJ on November 9, 2012. The ALJ rendered an unfavorable decision finding Plaintiff not disabled within the meaning of the Act.[6] Plaintiff requested review by the Appeals Council, and her request was granted on April 14, 2014.[7] The Appeals Council remanded to the ALJ. On November 13, 2014, the ALJ conducted a second hearing based on the Appeals Council's remand. On February 27, 2015, the ALJ rendered an unfavorable decision finding Plaintiff not disabled within the meaning of the Act.[8] Plaintiff again requested review by the Appeals Council and her request was denied on August 12, 2016,[9] making the ALJ's decision final for purposes of review.[10]

The ALJ determined that Plaintiff had severe impairments of bipolar disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); borderline intellectual functioning ("BIF"); trochanteric bursitis; and asthma.[11] With regard to claimed mental impairments the ALJ found that Plaintiff has moderate restriction in her activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration,

---

[5] The parties set forth the medical history in their respective memoranda. The Court finds it unnecessary to repeat that record in specific detail here. Rather, the Court notes those items that are pertinent within its decision.

[6] *See* Tr. at 158. "Tr." refers to the official transcript of the record before the Court.

[7] Tr. at 163-64.

[8] Tr. at 21.

[9] Tr. at 1-3.

[10] 20 C.F.R. § 404.981.

[11] Tr. at 13.

persistence or pace, and has experienced one to two episodes of decompensation of extended duration.[12] The ALJ determined that Plaintiff did not meet or equal a Listing and that Plaintiff had the RFC to perform light work that is simple and routine, with additional limitations.[13] Plaintiff is unable to perform her past relevant work.[14] Finally, the ALJ concluded that Plaintiff could perform light work as a cleaner and polisher, a gluer, and a small products assembler—all of which have jobs in the national economy.[15] Thus, the ALJ found Plaintiff non-disabled.

## STANDARD OF REVIEW

The Court reviews "the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[16] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[17] "It requires more than a scintilla, but less than a preponderance."[18]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all the evidence.[19] "In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as

---

[12] Tr. at 13-14.

[13] Tr. at 14-19.

[14] Tr. at 19.

[15] Tr. at 20.

[16] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

[17] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

[18] *Id.*

[19] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

3

well as significantly probative evidence he rejects."[20] In reviewing the ALJ's decision the Court evaluates the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[21] The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[22] Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[23] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[24]

## ISSUES

In this appeal Plaintiff argues the ALJ erred in:

(1) failing to consider all Listings, particularly 12.05;

(2) failing to include in the hypothetical the moderate limitations on concentration, persistence and pace;

(3) failing to comply with 20 C.F.R. § 404.[1]527(d) in discussing medical opinions and limitations, and misstating Dr. Kotter's opinion;

(4) failing to provide a sit-stand option and citing to the record for his RFC assessment;

(5) failing to follow SSR 96-7p and 82-59 regarding Plaintiff's compliance;

---

[20] *Id.* at 1010.

[21] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[22] *Lax*, 489 F.3d at 1084 (citation omitted).

[23] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[24] *Lax*, 489 F.3d at 1084 (citation omitted).

(6) failing to comply with SSR 00-4p by not asking the vocation expert ("VE") if her testimony was consistent with the DOT;

(7) his analysis of activities of daily living; and

(8) failing to consider the side effects of medication.

## DISCUSSION

### I. *The ALJ Did Not Err in Finding Plaintiff Did Not Meet the Mental Impairment Listings.*

"At step three, the undersigned must determine whether the [Plaintiff's] impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."[25] Plaintiff "has the 'step three burden to present evidence establishing her impairments meet or equal the listed impairments.'"[26] To satisfy this burden, Plaintiff's impairment must satisfy "the diagnostic description in the introductory paragraph and any one of the four sets of criteria."[27]

Here, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. In considering Plaintiff's mental impairments, the ALJ determined that Plaintiff did not meet the criteria of listings at 12.04, 12.05 and 12.06.[28] Plaintiff argues that the ALJ erred by not considering the capsule definition in 12.05 and by failing to follow POMS DI 24515.056(D)(1)(c).[29]

---

[25] T. at 11.

[26] *Peck v. Barnhart*, 214 F. App'x 730, 733 (10th Cir. 2006) (*quoting Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005)).

[27] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[28] Tr. at 13.

[29] With respect to Listing 12.05(C), the Social Security Administration's Program Operations Manual System (POMS) DI 24515.056(D)(1)(c) provides: "[S]lightly higher IQ's (e.g., 70–75) in the presence of

5

This Court finds that the ALJ did not err in his determination that Plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. The substantial evidence in the record supports this conclusion. The record does not support a finding that the Plaintiff meets the capsule definition of Listing 12.05, "which requires evidence 'that a claimant exhibits subaverage general intellectual functioning before the age of twenty-two.'"[30] Given that Plaintiff obtained her GED,[31] has a steady work history as an electrician which is considered a skilled position,[32] took and passed a written electrician's exam (on her third try),[33] the ALJ understandably did not find Plaintiff meets this Listing.[34] Further, the ALJ found that Plaintiff did not meet the 12.05(A), (B), (C), or (D) criteria[35] with a WAIS verbal score of 72 and a FSIQ score of 76.

---

other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found."

[30] *Crane v. Astrue,* 369 F. App'x 915, 921 (10th Cir. 2010) (citation omitted).

[31] Tr. at 35.

[32] Tr. at 62.

[33] Tr. at 37.

[34] Similar to this Plaintiff, the Court in *Crane* found that "[t]here was no evidence that Ms. Crane met the capsule definition for Listing 12.05 . . . given that Ms. Crane had a GED and a steady work history, which included jobs at the semi-skilled and skilled levels, the ALJ understandably did not discuss this Listing." *Crane,* 369 F. App'x at 921.

[35] 12.05 (B) requires a verbal, performance or full scale IQ score of 59 or less, (C) and (D) require a verbal, performance, or full scale IQ score of 60 through 70. Plaintiff's scores fall outside these parameters.

Since POMS DI 24515.056(D)(1)(c) "is only used when 'the capsule definition of that impairment is satisfied,'"[36] it is not applicable here as Plaintiff does not meet the capsule definition. Thus, the ALJ did not err in his determination that Plaintiff did not meet a Listing.

## II. *The ALJ Properly Considered Plaintiff's Moderate Limitations on Concentration, Persistence and Pace in the Hypothetical*

First, Plaintiff contends that the ALJ erred in failing to discuss and incorporate his findings of moderate mental impairments in concentration, persistence and pace in the hypothetical to the Vocation Expert ("VE"). The Tenth Circuit has stated "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."[37] The Tenth Circuit has held that, "where the record supported some limitation on particular functions, 'the ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the established rule that such inquiries must include *all* (and only) those impairments borne out by the evidentiary record.'"[38]

Here the ALJ's RFC included the following limitations related to Plaintiff's concentration, persistence and pace:

> She is limited in understanding[,] remembering and carrying out instructions to performing simple, routine work. She is also limited in using judgment in decision-making to those decisions found in simple, routine work. She can have occasional job contact with co-workers, supervisors and the public. She requires stable work, with few changes in routine.[39]

---

[36] *Crane,* 369 F. App'x at 921 (*citing* POMS DI 24515.056(B)(1)).

[37] *Miranda v. Barnhart*, 205 F. App'x 638, 643 (10th Cir. 2005) (citations omitted).

[38] *Id*. (citations omitted) (emphasis in original).

[39] Tr. at 14-15.

7

Later in the ALJ's decision he presents the following hypothetical to the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and *[RFC]*."[40] Here, the ALJ tailored the RFC assessment with additional limitations to account for Plaintiff's limitations in concentration, persistence and pace which are supported by medical opinions cited in the decision. The hypothetical presented included the RFC which included Plaintiff's limitations in concentration, persistence and pace. Accordingly, the ALJ did not err as Plaintiff's limitations in concentration, persistence and pace were properly considered in the hypothetical presented to the VE.

### III. The ALJ Failed to Comply with 20 C.F.R. § 404.1527 in Discussing Medical Opinions

Plaintiff argues that the ALJ failed to weigh medical opinions using the factors outlined in 20 C.F.R. § 404.1527. The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[41] "Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."[42] In determining whether to give a medical opinion controlling weight an ALJ "must first considered whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" If the medical opinion is not given controlling weight, the ALJ still needs to consider the following factors:

---

[40] Tr. at 20 (emphasis added).

[41] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citations omitted).

[42] *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (internal citations omitted) (emphasis in original).

> (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[43]

After considering these factors, "the ALJ must 'give good reasons in [the] . . . decision' for the weight he ultimately assigns the opinion."[44] Further, the ALJ "is required to evaluate a medical opinion for a non-treating physician using the same factors applicable to treating physician opinions."[45]

Here, the ALJ failed to articulate any reasons based on the above-factors for the weight assigned to the medical opinions considered. The only reasons cited in the record are merely that the ALJ's findings disagreed with the medical opinions, but there are no references to whether or not he found those opinions to be medically supported and if he considered any of the other factors listed in § 404.1527. The ALJ appears to have substituted his own judgment for those opinions of medical experts. Accordingly, the Court will REMAND to the ALJ for proper weighing and consideration of the factors set-forth above.

## IV. *The ALJ's RFC assessment is Not Fully Supported by the Record*

Plaintiff claims that the ALJ failed to provide citations for the physical RFC assessment. In reviewing the RFC provided by the ALJ, this Court finds that the RFC is not fully supported

---

[43] *Watkins*, 350 F.3d at 1301 (citations omitted).

[44] *Id*.

[45] *Sitsler v. Astrue*, 410 F. App'x 112, 119 (10th Cir. 2011) (citation omitted).

by the record. With regard to physical limitations, the consultative examination ("CE") with Dr. Moran found the following:

> I think [the Plaintiff] could alternate the activities of sitting, standing and walking for a total of eight hours per day. She can lift and carry about 30 pounds. She is able to bend, she is unable to squat. She is able to hear, speak, and travel independently, do all daily self-care activities, and repetitive motions with her hands.[46]

In drafting the physical RFC it appears the ALJ erred on the side of providing for additional weight restriction than what was recommended by Dr. Moran, but included physical abilities not included in the medical opinions considered:

> She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for about six hours during an eight-hour workday, and can sit for about six hours total during an eight-hour workday. She is unlimited in pushing, pulling or operating foot controls within this 20-pound range. She can never crawl, but can frequently climb ramps or stairs and ladders, ropes or scaffolds and crawl.

The ALJ fails to cite to any medical opinion or support in the record for his finding that Plaintiff is unlimited in pushing, pulling or operating foot controls within this 20-pound range. Further, he cites to no evidence supporting a finding that Plaintiff can "frequently climb ramps or stairs and ladders, ropes or scaffolds and crawl." Plaintiff's statements in the record state the following "I can no longer climb and work off ladders, can no longer hook up power panels."[47] Plaintiff further states that she is "afraid of stairs [and] get[s] exhausted [and] can't breath[e]."[48] The ALJ notes in his decision that Plaintiff's "pulmonary function tests were consistent with

---

[46] Tr. at 490.

[47] Tr. at 336.

[48] Tr. at 341.

10

chronic obstructive pulmonary disease,"[49] which is contrary to the physical abilities he included in the RFC. Accordingly, the Court will REMAND with instructions for the ALJ to not substitute his judgment for the opinion evidence on record in crafting the RFC.

## V. The ALJ Erred in His Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to follow SSR 96-7p (evaluation of credibility as it relates to symptoms)[50] and SSR 82-59 (criteria for finding failure to follow prescribed treatment) in evaluating Plaintiff's symptoms. Specifically, Plaintiff argues that the ALJ focused on a handful of incidents where Plaintiff did not follow a treatment plan, and did not consider Plaintiff's positive actions in seeking treatment, obtaining medications, etc.

When evaluating Plaintiff's statements about her symptoms, the ALJ is to follow a two-step process where the ALJ (1) "must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms,"[51] and (2) "must evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work."[52]

"When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's

---

[49] Tr. at 16.

[50] SSR 96-7p has been superseded by SSR 16-3p, however, 96-7p was in effect at the time of the ALJ's decision, so this Court will review the ALJ's decision under 96-7p. *See* SSR 96-7p, 1996 WL 374186 (1996).

[51] *Farden v. Berryhill*, 2017 WL 3052048 *5 (D.N.M. June, 17, 2017) (*citing* SSR 96-7-p).

[52] *Id*. at *6.

statements."[53]  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[54]

Here, the ALJ make a blanket statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[55]  The ALJ goes on to state that the "objective medial evidence does not support the degree of severity alleged by the [Plaintiff]."[56]  The ALJ does not link these conclusions to evidence in the record.  Then the ALJ goes on to support his credibility determination with focus on Plaintiff's incarceration for fraud and forgery, reference to a failed treatment prior to the date of onset, and her failing to practice relaxation techniques for her anxiety.[57]  The ALJ appears to have a negative bias toward Plaintiff based on these factors, rather than basing the credibility determination on relevant medical evidence in the record.

The ALJ's credibility conclusion is not properly supported for several reasons.  Although the ALJ provides a summary of the medical record, he does not articulate what portions he considered in evaluating the credibility of Plaintiff's symptoms.  Thus, making review by this Court difficult, if not impossible.

Further, the Court finds that the ALJ erroneously relied on Plaintiff's failure to practice relaxation techniques without considering the following "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether

---

[53] SSR 96-7p, 1996 WL 374186 *4.

[54] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citation omitted).

[55] Tr. at 15.

[56] *Id.*

[57] Tr. at 17.

12

the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."[58] Given the number of severe mental impairments identified by the ALJ, his credibility determination is not well supported by his choosing of one failed treatment for one of several mental impairments.

"Although this court ordinarily defers to the ALJ as trier of fact on credibility . . . deference is not an absolute rule."[59] Here, where the ALJ's decision on credibility failed to follow the steps outlined in SSR 96-7p and his conclusions on credibility are not linked to medical evidence in the record, this Court must REMAND to the ALJ for proper evaluation of Plaintiff's credibility based on the medical evidence in the record. Further, in re-evaluating Plaintiff's credibility, this Court instructs the ALJ to provide reasons related to any factors he relies on (such as activities of daily living, medication side effects, etc.), to support his credibility decision beyond medical opinion evidence.

### VI. The ALJ Erred in Failing to Inquire About Conflicts between VE and DOT

Plaintiff argues that the ALJ erred in not inquiring if the VE's testimony conflicted with the DOT. The Plaintiff is correct that the ALJ "has an affirmative responsibility to ask about any potential conflict between that VE or VS evidence and information provided in the DOT."[60] The Court REMANDS with instructions that the ALJ identify and inquire about any conflicts between the VE's testimony and DOT in accordance with SSR 00-4p.

---

[58] *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citations omitted).

[59] *Id.* (citations omitted).

[60] SSR 00-4p (S.S.A.), 2000 WL 1898704 *4.

### VII.     The ALJ Did Not Err In Failing to Consider the Side Effects of Medication

Plaintiff argues that the ALJ failed to consider the side effects of the medication she is taking in presenting hypotheticals to the VE.  Plaintiff states that she testified that her medication caused smacking of lips, dizziness, and blurry vision, and the hypothetical provided for no limitations on balancing and stated that she could frequently climb ropes and scaffolds.  In presenting this argument Plaintiff does not cite to instances where she requested different medication because of any alleged side effects. Further, this Court conducted its own review of the medical records for side effects related to dizziness, blurry vision, and lip smacking, and found no mention of such side effects or any request to have her medication changed.  The ALJ is not required to discuss all evidence, and it appears his failure to include these side effects of medications was justified.

Additionally, as determined above, this Court found that the ALJ erred in his assessment of Plaintiff's physical abilities in forming the RFC.  Therefore, on remand the ALJ will be required to revise the hypothetical to the VE based on re-assessment of the Plaintiff's physical abilities.  Notwithstanding the remand with regard to Plaintiff's physical abilities, this Court finds that the ALJ properly eliminated any alleged side effects from medication from the hypothetical to the VE.

## ORDER

Based on the foregoing, the ALJ's decision is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Order. IT IS FURTHER ORDERED that this case be assigned to a different ALJ on remand.[61]

DATED this 28 September 2017.

Brooke C. Wells
United States Magistrate Judge

---

[61] *Hinton v. Massanari*, 2001 WL 744971 *5 (10th Cir. July 3, 2001).